REGINA GRAPE PRODUCTS CO. *vs.* SUPREME WINE CO., INC.
(and a companion case[1]).

Suffolk.   April 10, 1970. — June 11, 1970.

Present: WILKINS, C.J., SPALDING, CUTTER, REARDON, & QUIRICO, JJ.

*Sale,* Contract of sale, Warranty.   *Evidence,* Extrinsic affecting writing.
*Contract,* Performance and breach.   *Conflict of Laws.*

A contention that California, and not Massachusetts, law was applicable
in contract actions respecting wine sold by a California corporation
to a Massachusetts corporation could not be raised for the first time
in this court where it was not raised before an auditor whose findings
were final.  [632]

Parol evidence of negotiations between a buyer and a seller of wine, of
purchases, and of furnishing of samples by the seller prior to a letter
which was the basis of a contract of sale between them and which
was not free from ambiguity was admissible to establish the terms of
the contract.  [634]

In cross actions arising out of a contract for sale of a large quantity of
dry wine, conclusions were warranted that in delivering wine not cor-
responding to samples supplied by the seller to the buyer as part of
the contract the seller committed a breach of an express warranty
under G. L. c. 106, § 2-313 (c), that by delivering wine not of the
agreed quality and unfit for use by the buyer for the purpose, known
to the seller, of mixture with sweet wine the seller committed a breach
of an implied warranty of fitness under § 2-315, that in delivering
wine of no market value and not saleable the seller committed a
breach of an implied warranty of merchantability under § 2-314, that
the buyer was entitled to damages for such breaches of warranties,
and that, by reason of the defects in the wine delivered, which was a
part of the quantity contracted for, the buyer was relieved of any
contract obligation to purchase the remainder.  [634-635]

TWO ACTIONS OF CONTRACT.   Writs in the Superior Court
dated September 28, 1964, and February 17, 1965.

The cases were heard by *Kalus,* J., on an auditor's reports.
*Sumner Darman* for Regina Grape Products Co.
*Morris Michelson* for Supreme Wine Co., Inc.

[1] Supreme Wine Co., Inc. *vs.* Regina Grape Products Co.

REARDON, J. This matter is here on two bills of exceptions. In the first, the plaintiff Regina Grape Products Co. (Regina) has excepted to the allowance of a motion for judgment on the auditor's report made by the defendant Supreme Wine Co., Inc. (Supreme). In the companion case, the defendant Regina has excepted to the allowance of a motion made by Supreme for judgment for the plaintiff on the auditor's report.

These cross actions are based on the sale of red, dry wine by Regina for which Supreme claims damages for breach of warranty on the quality of the wine delivered by Regina, while Regina claims a loss of profit in that Supreme failed to purchase more wine. It was agreed that the findings of fact of the auditor would be final.

1. Regina is a California corporation while Supreme is incorporated in Massachusetts. There is raised here for the first time by Regina the contention that California, and not Massachusetts, law is applicable. Nothing in the record indicates that this contention was raised at the auditor's hearing. At that hearing Regina apparently agreed to the trial of the cases on the basis of Massachusetts law. Since the auditor was presented with no evidence, no request, no objection and no exceptions consonant with Regina's present argument, Massachusetts law controlled in the case. *Santa Maria* v. *Trotto*, 297 Mass. 442, 447, and cases cited. See *Lee* v. *Allied Sports Associates, Inc.* 349 Mass. 544, 552.

2. The auditor's report disclosed the following. On February 5, 1963, Supreme dispatched a letter to Regina reading: "Since the time that we started purchasing from you, a few years ago, we have used only your wine, even though we could have made purchases at a lesser price. However, recently we have been approached by more than one reputable firm with a $.47 per gallon price. I am not asking that you meet the above quoted price. I am willing to pay you $.52½ per gallon for 125,000 gallons of Red Dry Wine. If this is acceptable please ship 8,000 gallons immediately. Please notify either way. Would you please

indicate that this is agreeable to you by placing your signature below." This letter was signed by an officer of Supreme and countersigned by an officer of Regina. It appeared that Regina from June, 1961, to February, 1963, had supplied wine uniform in color and quality and up to standards which had been discussed between the officers of the two parties, and that in December, 1962, the president of Regina had visited Supreme and left samples of red, dry wine of desired quality and color uniformity. It was on the basis of this experience and the samples left that Supreme wrote its letter of February 5, 1963. The first shipment containing 8,082 gallons from Regina was found to be too light in color and quality and Supreme complained. A second shipment of 5,493 gallons was found to be satisfactory and Supreme so notified Regina. Further shipments were unsatisfactory, either being too dark or too light or with other deficiencies. Supreme protested by telephone and letter and ordered no wine after July 15, 1963, and began purchasing from another California winery in September, 1963. The auditor made general findings that if Supreme were under an obligation to purchase from Regina by reason of the letter it was relieved of that obligation because of the poor quality of the wine and that Regina had proved no damages. In the action by Regina he found for the defendant.

In the cross action by Supreme, the auditor found that it was constrained to make allowances to customers and suffered a loss of sales equal in amount to the allowances. Added to some freight charges to which he found Supreme entitled, he made an ultimate finding for Supreme in a stated amount, plus interest. The matter was recommitted to him thereafter and he took additional evidence from which he found that if the wine complained of had been as warranted it would have had a fair market value of 52½¢ a gallon but that its actual market value was zero. He then found that Supreme had received 52,000 gallons of which 5,493 gallons were in accordance with the warranty. The damage thus sustained was found by the auditor to be at

$24,426.67, to which a loss of profit of $2,501.76 was added. The judgment ordered on the auditor's report was in the sum of $26,796.47, plus a certain amount of interest.

Were the words of the parties entirely in writing there would be a question of law for the court. *Ingalls* v. *Green,* 337 Mass. 444, 447. The letter of February 5, 1963, however, which formed the basis of the contract, was not free from ambiguity, and the auditor properly permitted the introduction of oral evidence not to contradict but to establish the terms of the contract. Where there has been a partial integration, parol evidence is admissible. In this instance previous negotiations and dealings made manifest the frame in which the letter was written and resort to these negotiations and dealings may properly be made. *W. R. Grace & Co.* v. *National Wholesale Grocery Co. Inc.* 251 Mass. 251, 253–254. *McCabe* v. *Liggett Drug Co. Inc.* 330 Mass. 177, 179–180, and cases cited. The evidence disclosed prior purchases of wine from Regina and the visit of its president who left samples. It is quite clear, too, that the complaints lodged by Supreme on the quality of the wine shipped to it were based on prior negotiations, purchases and samples.

The wine manufactured by Regina was sold to Supreme for a particular purpose. As Regina knew, Supreme relied on and trusted the judgment of Regina to send to it red, dry wine corresponding to samples received. In failing to deliver wine corresponding to the samples supplied, Regina committed a breach of an express warranty. G. L. c. 106, § 2–313 (c). For pre-code cases see *W. R. Grace & Co.* v. *National Wholesale Grocery Co. Inc., supra,* at pp. 253–254; *Morse* v. *Andler,* 330 Mass. 631. A warranty was also created by the knowledge of Regina of the particular purpose for which the wine was to be used (in a mixture with sweet wine). By not shipping wine of the necessary quality, Regina committed a breach of an implied warranty of fitness. G. L. c. 106, § 2–315. *W. R. Grace & Co.* v. *National Wholesale Grocery Co. Inc., supra,* at pp. 254–255, and cases cited. *Hunt* v. *Perkins Mach. Co. Inc.* 352 Mass. 535, 541.

The auditor further found that the wine shipped was watery, light in body and in color and not uniform in color or quality and would find no buyer. Thus it had no market value. The wine was therefore not merchantable red, dry wine, which also resulted in a breach of an implied warranty of merchantability under G. L. c. 106, § 2–314. *McCabe* v. *Liggett Drug Co. Inc., supra,* at p. 179. *Hunt* v. *Perkins Mach. Co. Inc., supra,* at p. 541.

Since the wine was defective Supreme was not obliged to purchase more wine from Regina than it did, and was thus relieved of its contract obligations to Regina. The auditor properly found for Supreme in the action where Regina was the plaintiff.

3. In the action by Supreme all we have said in the action by Regina would be applicable. We view the action of Regina as a breach of both express and implied warranties. We find no fault in the auditor's award of damages due based on the quality of the wine and the loss of profits. His ultimate findings, being not inconsistent with his subsidiary findings, are valid.

4. We note that the proper total of the award made by the auditor to Supreme is $26,928.43. In the action by Regina the exceptions are overruled. In the action by Supreme the exceptions are overruled. In entering judgment the figure $26,928.43 is to be substituted for the figure $26,796.47.

*So ordered.*