RAE F. GILL, P.C. *vs.* LOUIS F. DIGIOVANNI & another.[1]

No. 92-P-868.

Middlesex. November 20, 1992. - May 19, 1993.

Present: ARMSTRONG, PERRETTA, & GILLERMAN, JJ.

*Divorce and Separation*, Separation agreement, Attorney's fees. *Contract*, Third-party beneficiary, Assignment, Arbitration, Separation agreement. *Arbitration*, Attorney's fees, Parties.

Provisions in a separation agreement extended an election between arbitration or litigation to the party seeking enforcement of the agreement, and the party against whom enforcement was sought thereby consented in advance to proceed under whichever remedy was selected. [501-503]

An attorney who was a third-party beneficiary of a provision in a separation agreement to pay the wife's attorney's fees was not an intended beneficiary of an arbitration provision in the separation agreement, nor was he a party to the arbitration provision; thus he could not compel arbitration of the amount of his legal fee. [503-505]

Nothing in the record of a proceeding to compel arbitration supported the plaintiff's claim that a party to an arbitration agreement had assigned her right to elect arbitration to the plaintiff. [505-506]

CIVIL ACTION commenced in the Superior Court Department on February 19, 1991.

A motion to compel arbitration was heard by *Gordon L. Doerfer*, J.

*Laurence S. Fordham* for the plaintiff.

*James F. Kavanaugh, Jr.* (*Maureen E. Curran* with him) for the defendants.

PERRETTA, J. This appeal pursuant to G. L. c. 251, § 18(*a*)(1), brings before us the questions whether Mary DiGiovanni (Mary) could compel her former husband, Louis DiGiovanni (Louis), to arbitrate the amount of her legal fees which the terms of their separation agreement require him to

---

[1] Mary DiGiovanni.

pay on her behalf and, if so, whether her attorney, a member of the law firm which assigned its rights to this claim to Rae F. Gill, P.C., a partner in Mary's attorney's firm, is a third-party beneficiary of the agreement and can, in Mary's stead, compel Louis to proceed to arbitration. A Superior Court judge concluded that because Louis and Mary had not intended arbitration to be the exclusive remedy by which disputes under their agreement were to be resolved, neither could compel the other to arbitrate. He denied the motion to compel without having to reach the question of standing. We conclude that although the plaintiff[2] is a third-party beneficiary of Louis's promise to pay Mary's reasonable attorneys' fees and although the separation agreement gives the right to elect the remedy to whichever party is seeking enforcement of its terms, the plaintiff has no right under G. L. c. 251, § 2(*a*), or the separation agreement either to compel or to elect arbitration. We affirm the order denying the motion to compel Louis to proceed to arbitration.

1. *Background.* We set out the facts as they appear in the parties' various pleadings and attached exhibits. In 1989, Louis and Mary entered into an agreement in contemplation of divorce. Paragraph eighteen of that agreement provides, in part: "Louis shall pay Mary's reasonable attorneys' fees and expenses for all services rendered to Mary by Fordham & Starrett before and after the date hereof related to the parties' marital relationship, dissolution of it, or financial and other arrangements in connection therewith. . . . The parties shall endeavor to agree upon the amount of Mary's legal fees and expenses to be paid by Louis. The agreement of the parties shall not unreasonably be withheld."

When the plaintiff rendered a final bill to Mary, she protested and discharged the firm. Because neither Mary nor Louis would pay the bill, the plaintiff claimed standing as a third-party beneficiary under the separation agreement and brought an action against Louis. As we read paragraph eighteen of the agreement and the controlling cases, we think it

---

[2]As used throughout this opinion, the word plaintiff refers to Mary's prior counsel, the assignor of the claim here pursued.

clear that the plaintiff is a creditor beneficiary who is entitled to proceed directly against the promisor, Louis, to recover reasonable attorney's fees for legal services rendered to Mary. See *Choate, Hall & Stewart* v. *SCA Servs., Inc.*, 378 Mass. 535, 546-549 (1979); *Rae* v. *Air-Speed, Inc.*, 386 Mass. 187, 193-196 (1982); *Flattery* v. *Gregory*, 397 Mass. 143, 148-149 (1986); *Margolies* v. *Hopkins*, 401 Mass. 88, 90-91 (1987).

About five months after bringing the action against Louis, the plaintiff amended his complaint and brought Mary into the proceedings as a defendant. See *Choate, Hall & Stewart* v. *SCA Servs., Inc.*, 378 Mass. at 549 n.23. He also added a specific request for an order compelling Louis to proceed to arbitration. Mary and Louis united in their resistance against the plaintiff and filed counterclaims alleging that the plaintiff's agreement with Mary was an unethical contingent fee agreement in violation of S.J.C. Rule 3:05, as appearing in 382 Mass. 762 (1981), and G. L. c. 93A, § 9.[3]

It was another five months before the request for arbitration was brought forward and pressed. No longer relying upon the request in his amended complaint, the plaintiff sought to exercise any right Mary might have under the separation agreement to compel Louis to arbitration by bringing a motion pursuant to G. L. c. 251, § 2(*a*). As earlier noted,

---

[3]Mary and the plaintiff dispute the terms of their fee agreement. She alleges that she owes the plaintiff about $83,000, based upon an agreed hourly rate and time spent. The plaintiff claims that he was retained by Mary because she and Louis, motivated by the nature and extent of Louis's estate, sought out attorneys experienced in commerical matters rather than domestic litigation. He maintains that when Mary retained him, he explained to her that the complexity of the property issues and her limited personal ability to pay legal fees made an hourly rate unrealistic. Consequently, they agreed upon a flat fee of $350,000. Because of his reassessment of the value of his legal services and an added interest factor due to delayed payment, the plaintiff now claims to be owed $500,000.

If it is determined that Louis and Mary are correct in their claim, that the fee agreement provides for an unethical contingency fee, it is possible that Louis would have to pay nothing to the plaintiff. See *Guenard* v. *Burke*, 387 Mass. 802, 806-808 (1982). However, questions as to the validity of the underlying fee agreement between Mary and the plaintiff are not before us on this appeal.

the Superior Court judge found that Mary had no such right and denied the motion.

2. *Arbitration under the separation agreement.* Before considering whether the plaintiff can compel Louis to proceed to arbitration, we look to see whether the parties' separation agreement provides Mary with that remedy. "[I]n the absence of an actual agreement to arbitrate a particular dispute or class of disputes, the Court cannot compel arbitration. *United Steelworkers* v. *Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582-83, . . . (1960). A court must, therefore, make a preliminary determination of the intent of the parties as evidenced by the words of the arbitration clause." *Hurlbut* v. *Gantshar,* 674 F. Supp. 385, 390 (D. Mass. 1987). See also *Computer Corp. of America* v. *Zarecor,* 16 Mass. App. Ct. 456, 459 (1983); G. L. c. 251, § 2(*a*) and (*b*).

To put the arbitration provision in context, it is necessary to digress. Paragraph ten of the agreement requires Louis to secure all his obligations to Mary with an irrevocable letter of credit. In the event he fails to perform any of his obligations, paragraph fourteen allows Mary to draw upon the letter of credit to satisfy the obligated payments which are for amounts that are either liquidated or approved by Louis. Paragraph fourteen goes on to provide:

> "As to all other matters pursuant hereto, which are the subject of disagreement or unresolved differences, Mary and Louis shall have the following remedies available to them when seeking to enforce the provisions of this Agreement:
> "a. arbitration pursuant to the Commercial Arbitration Rules of the American Arbitration Association by an arbitrator to be mutually agreed upon by the parties, or selected by the parties pursuant to the applicable procedures of the American Arbitration Association; and
> "b. all other remedies available to Mary or Louis in law or equity.
> "In the event a matter in dispute as aforesaid is resolved by arbitration or other means as provided herein,

Mary may draw upon the letter of credit referred to in paragraph 10 above in payment of any amount which she has been awarded, and judgment upon any award rendered by arbitration may be entered in any court that has jurisdiction thereof."

As construed by the Superior Court judge, paragraph fourteen provides for arbitration as "one of a range of possible remedies available to Louis and Mary while expressly reserving their right to pursue 'all other remedies available . . . in law or equity.' " Because arbitration was not the exclusive remedy provided for by the agreement, the Superior Court judge concluded that the parties could not be compelled to arbitrate their dispute.

In our view, this interpretation of the arbitration provision renders it meaningless. Paragraph fourteen expressly states that in seeking to enforce the terms of the agreement, Louis and Mary "shall" have arbitration available to them. If, however, arbitration cannot be had without the consent of the party against whom enforcement of the agreement is sought and that party refuses to consent, then arbitration is not an available remedy for the party seeking relief from the breach. "Where the agreement to arbitrate is expressed in general terms, it 'should be construed as broadly as the parties obviously intended.' *Glenn Acres, Inc.* v. *Cliffwood Corp.*, 353 Mass. 150, 154 (1967), and cases cited. Under such a clause, the parties can be taken to have given their advance consent to arbitrate any dispute which they are unable to settle by reference to the terms of the contract (*Itek Corp.* v. *McEnness*, 340 Mass. 409, 412 [1960]) and their assent to be bound by 'the honest judgment of the arbitrator as to a matter referred to him.' *Trustees of the Boston & Me. Corp.* v. *Massachusetts Bay Transp. Authy.*, 363 Mass. 386, 391 (1973), quoting from *Phaneuf* v. *Corey*, 190 Mass. 237, 247 (1907)." *Geller* v. *Temple B'nai Abraham*, 11 Mass. App. Ct. 917, 918 (1981).

Louis and Mary also expressly agreed that other remedies in law or equity would be available to them. However, a dispute cannot be resolved by arbitration *and* litigation. We

must not only construe paragraph fourteen "as broadly as the parties obviously intended," *Glenn Acres, Inc.* v. *Cliffwood Corp.*, 353 Mass. at 154, we must also give reasonable effect to all the provisions of that paragraph. See *J.A. Sullivan Corp.* v. *Commonwealth*, 397 Mass. 789, 795 (1986). As we read paragraph fourteen, it extends an election between arbitration or litigation to the party seeking enforcement of the agreement. By agreeing to this right of election, the party against whom enforcement is sought consented in advance to proceed to arbitration should that be the remedy selected. See *Geller* v. *Temple B'nai Abraham*, 11 Mass. App. Ct. at 918.

Had Mary acknowledged the plaintiff's bill as reasonable, it would have been open to her either to sue Louis or to compel him to arbitration in the event he did not honor his obligation under paragraph eighteen of the agreement. The question now is whether the plaintiff has the same right of election by reason of his status as an intended beneficiary of that paragraph.

3. *The plaintiff's right to elect arbitration.* In arguing that he can exercise Mary's right of election under paragraph fourteen, the plaintiff cites *Rae* v. *Air-Speed, Inc.*, 386 Mass. at 196, as authority for the proposition that he, as a creditor beneficiary, succeeds to all the promisee's rights and burdens in enforcing the promise. This argument goes wide of the mark. The fact that the plaintiff is a creditor beneficiary under paragraph eighteen of the agreement does not automatically make him an intended beneficiary of every other provision therein contained. The rights and burdens which the plaintiff acquires as an intended beneficiary are derived from application of common law principles and turn on the intent of the parties to the agreement, all as discussed in *Rae* v. *Air-Speed, Inc., supra* at 193-196, and cases therein cited.

Arbitration is a remedy created by a statute which limits its availability to the parties to an arbitration agreement. See *Computer Corp. of America* v. *Zarecor*, 16 Mass. App. Ct. at 460; G. L. c. 251, § 2(*a*). Cf. *Miller* v. *Regents of Higher Educ.*, 405 Mass. 475 (1989); G. L. c. 150C. The

plaintiff claims that *Kearsarge Metallurgical Corp.* v. *Peerless Ins. Co.*, 383 Mass. 162, 167 (1981), and *School Comm. of Boston* v. *United Steelworkers of America, Local 8751*, 29 Mass. App. Ct. 53, 54-55 (1990), hold that a third-party beneficiary of an arbitration agreement can compel the promisor to arbitrate. Even were we to read those cases as expansively as does the plaintiff, and we do not,[4] he nonetheless would have to show that he is a beneficiary of paragraph fourteen of the agreement to prevail on his motion to compel. The plaintiff cannot make this showing.

Under paragraph fourteen, the right to arbitration is inchoate until it has been elected as a remedy by the party seeking to enforce the terms of the agreement. Each party's promise is simply to be bound by the other's election, and performance of the promise will not satisfy Mary's obligation to the plaintiff. The plaintiff, therefore, is not an "intended beneficiary" within the meaning of Restatement (Second) of Contracts § 302(1)(a). See also *Choate, Hall & Stewart* v. *SCA Servs. Inc.*, 378 Mass. at 543-546.

If the plaintiff is an intended beneficiary of paragraph fourteen it is because the "circumstances indicate that . . . [Mary] intend[ed] to give . . . [the plaintiff] the benefit of the promised performance." Restatement (Second) of Contracts § 302(1)(b). See also *Rae* v. *Air-Speed, Inc.*, 386 Mass. at 195 & n.3, holding that an employee was an intended beneficiary, as defined by § 302(1)(b), of a contract whereby an insurance agent promised the employer that he would obtain workers' compensation insurance coverage for his employees.

The only performance promised by Louis in paragraph fourteen is to proceed with the form of dispute resolution elected by Mary. That promise was not intended or designed by Mary to benefit the plaintiff. For example, had Mary received the plaintiff's bill and proceeded against Louis for its payment, the plaintiff could not have insisted that she do so

---

[4] In each of those cases, the purported "beneficiaries" of the arbitration agreement were made parties to the agreement by written expressions of intent rather than by application of common law principles.

by arbitration. No matter the remedy elected by Mary, the most the plaintiff could expect would be Louis's payment of her reasonable attorneys' fees.

Whatever benefit the plaintiff perceives as being particular to arbitration is so remote as to make him, at most, an incidental beneficiary of paragraph fourteen. As such, he acquires no rights against either party to that promise. See Restatement (Second) of Contracts §§ 302(2) & 315. See also 4 Corbin, Contracts § 779C (1951 & Supp. 1992).

As the plaintiff is neither an intended beneficiary of nor a party to the arbitration provision, his motion to compel was correctly denied. Our conclusion makes it unnecessary for us to consider the defendants' claim that the plaintiff waived any right he might have to seek arbitration.[5]

4. *Other claims.* Even assuming that Mary could assign to the plaintiff her right to elect arbitration, see *Old Colony Regional Vocational Technical High Sch. Dist.* v. *New England Constructors, Inc.*, 5 Mass. App. Ct. 836 (1977), there is nothing in the materials before us which supports the claim that she in fact did make such an assignment.[6] Whether the Superior Court judge's denial of the plaintiff's motion for reconsideration, filed after the appeal from the denial of the motion to compel had been entered in this Court, was based upon the timing of the request[7] or upon the

---

[5]Although the original complaint did not seek arbitration, the plaintiff can reasonably argue that the circumstances of this case (an order to compel arbitration was sought in the amended complaint and no discovery had been conducted in the ten-month interval between the commencement of the action and the denial of the motion to compel) would not support a conclusion that the plaintiff had waived any right to seek arbitration. Compare *Home Gas Corp. of Mass., Inc.* v. *Walter's of Hadley, Inc.*, 403 Mass. 772, 778 (1989).

[6]As all the evidence pertaining to this claim (affidavits and correspondence between the plaintiff and Mary) is in the record, there is no need to remand the matter for an evidentiary hearing. We are in as good a position as a Superior Court judge to determine whether these documents show that Mary assigned her rights under the agreement to the plaintiff.

[7]See *Grubert* v. *Grubert*, 20 Mass. App. Ct. 811, 817 n.12 (1985), and cases and other authorities therein cited.

contents of the supporting materials, we see neither an abuse of discretion nor other error of law in the ruling.

> *Order denying the plaintiff's motion to compel arbitration affirmed.*
>
> *Order denying the plaintiff's motion for reconsideration affirmed.*